07-3503-cv
Duch v. Jakubek

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: December 9, 2008                                Decided:  December 4, 2009)

Docket No. 07-3503-cv

KAREN DUCH,

*Plaintiff-Appellant*,

v.

LIEUTENANT EDWARD JAKUBEK, in his official capacity,
NEW YORK STATE OFFICE OF COURT ADMINISTRATION, and
THE STATE OF NEW YORK,

*Defendants-Appellees*,

COURT OFFICER BRIAN KOHN, individually and in his official capacity,

*Defendant.*[*]

Before: LEVAL, CABRANES, and HALL, *Circuit Judges*.

Plaintiff-appellant appeals from a judgment of the United States District Court for the Southern

District of New York (Loretta A. Preska, *Judge*) granting summary judgment in favor of defendants-

appellees and dismissing her claims of sexual harassment brought pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law

§ 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*  Although

we agree with the District Court that plaintiff was not deprived of all reasonable avenues of complaint,

---

[*] The Clerk of Court is directed to amend the official caption to conform to the listing of the parties stated above.

1

we hold that a reasonable jury could conclude that the employer defendants (1) knew, or in the exercise of reasonable care should have known, of the harassment directed at plaintiff and (2) failed to take appropriate remedial action.

Accordingly, we affirm the District Court insofar as it held that (1) plaintiff was not deprived of all reasonable avenues of complaint and (2) defendants cannot be liable based on information that plaintiff requested be kept confidential but which was conveyed to a co-worker. We vacate the order of the District Court insofar as it (1) held that no reasonable jury could find that plaintiff's supervisor knew or should have known of the harassment directed at plaintiff, (2) held that no reasonable jury could find that defendants failed to take appropriate remedial action, and (3) denied plainitff's motion to amend the complaint as futile. We remand the cause for further proceedings consistent with this opinion.

> MATHEW PAULOSE, JR., Koehler & Isaacs LLP, New York, NY,
> *for Plaintiff-Appellant.*
>
> PATRICK J. WALSH, Assistant Solicitor General (Andrew M.
> Cuomo, Attorney General of the State of New York, *on
> the brief*, Barbara D. Underwood, Solicitor General, Peter
> Karanjia, Special Counsel to the Solicitor General, *of
> counsel*), Office of the Attorney General for the State of
> New York, New York, NY, *for Defendants-Appellees.*
>
> Anjana Samant, Outten & Golden LLP, New York, NY (Stefano
> G. Moscato, National Employment Lawyers Association,
> San Francisco, CA, *on the brief*), *for Amicus Curiae National
> Employment Lawyers Association in support of Plaintiff-
> Appellant.*

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff-appellant Karen Duch ("plaintiff" or "Duch"), a former court officer and employee of the New York State Office of Court Administration ("OCA"), appeals from the August 6, 2007 judgment of the United States District Court for the Southern District of New York (Loretta A. Preska,

*Judge*) insofar as the District Court, in a August 2, 2007 memorandum and order, granted summary judgment in favor of defendants-appellants Lieutenant Edward Jakubek ("Jakubek"), OCA, and the State of New York (jointly, "defendants" or "employer defendants") on plaintiff's employment discrimination claims and denied plaintiff's motion to amend the complaint. Plaintiff brought the underlying action in January 2004, claiming that she had been sexually harassed by a fellow court officer, defendant Brian Kohn ("Kohn"), over a period of several months in 2001. Plaintiff claimed that employer defendants failed properly to investigate the harassment and failed to prevent further harassment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

The District Court granted summary judgment for defendants upon concluding that Kohn's harassment of plaintiff could not be imputed to defendants. *Duch v. Kohn*, No. 04 Civ. 109, 2007 WL 2230174 (S.D.N.Y. Aug. 3, 2007). Although we agree with the District Court that plaintiff was not deprived of all reasonable avenues of complaint, we hold that a reasonable jury could conclude that defendants (1) knew, or in the exercise of reasonable care should have known, of the harassment directed at plaintiff and (2) failed to take appropriate remedial action. Accordingly, we vacate the judgment of the District Court and remand the cause for further proceedings consistent with this opinion.

## BACKGROUND[1]

During the time period relevant to this case, Duch was employed as a court officer by the New York State Unified Court System ("UCS"). *Duch*, 2007 WL 2230174, at *1. OCA is the administrative branch of the UCS. *Id.* On August 12, 1999, she was assigned to Midtown Community Court

---

[1] The facts that follow are taken largely from the District Court's August 3, 2007 Memorandum and Order and are undisputed unless otherwise noted. *See Duch*, 2007 WL 2230174, at *1 n.2.

3

("MCC"). *Id.* The personnel at the MCC consisted of a judge, a lieutenant, a sergeant, approximately twelve court officers, and four court clerks. *Id.* One of the court officers, Rosemary Christiano, was also the Equal Employment Opportunity ("EEO") Liaison at the MCC. *Id.* Other personnel of note included defendant Jakubek, who was the highest-ranking court officer at the MCC, and Chief Court Clerk Don Vasti ("Vasti"), who was the highest-ranking administrative official at the MCC. *Id.* During the relevant time period Jakubek was supervisor to both Duch and defendant Kohn.

In May 2001, Kohn began working at the MCA as a court officer—in the same position and rank as Duch. *Id.* On September 25, 2001, Duch and Kohn engaged in a consensual sexual encounter at Duch's apartment (this encounter did not involve intercourse). *Id.* According to Duch, she informed Kohn the next day that the encounter had been a "mistake" and that she did not want to pursue further relations with him. J.A. 347. Following that encounter and continuing until January 2002, Kohn allegedly made a series of unwanted sexual advances towards Duch. *Duch*, 2007 WL 2230174, at *2. These allegedly included physical contact, sexually graphic language, and physical gestures. *Id.*

In October 2001, after learning that she was scheduled to work alone with Kohn on an upcoming Saturday, Duch approached Jakubek and asked him for the day off. She did not inform Jakubek at that time that Kohn was reason she sought to change her schedule. Later that same day, Jakubek called Duch back into his office and said that he had heard that she wanted to change her schedule to avoid working with Kohn. Jakubek explained that he had spoken to Kohn and had asked him directly why Duch would feel uncomfortable working with him and that Kohn had responded, "well, maybe I did something or said something that I should not have." J.A. 81. According to Duch, Jakubek said that he had told Kohn to "cut it out, to grow up." *Id.* Jakubek then asked Duch if she had a problem working with Kohn and, because (Kohn asserts) she was becoming emotional at this

4

point in the conversation and was trying to maintain her composure, she responded by saying, "I can't talk about it." *Id.* at 82. Duch claims that Jakubek replied, "That's good because I don't want to know what happened," and then laughed. *Id.* Following this exchange, Jakubek offered to change Duch's schedule so she would not have to work alone at night with Kohn, *id.*, and thereafter did not schedule Duch to work with Kohn alone. *Duch*, 2007 WL 2230174, at *2.

Later in October 2001, Duch spoke with Christiano about Kohn's harassment—the first of several conversations on the subject. *Id.* Duch admits that, prior to this occasion, she was unaware that Christiano was an EEO Liaison. *Id.* However, during their first conversation about the alleged harassment, Christiano asked Duch if she was speaking to her "as a friend" or because Christiano was an EEO Liaison. *Id.* Duch responded, "I think I'm telling you as a friend." *Id.* According to Christiano, she asked Duch whether Duch wanted her to report Kohn's behavior and Duch responded "absolutely not." *Id.* Duch nevertheless maintains that she told Christiano of the harassment, "*hoping* that Christiano would stop or report the conduct." *Id.* Throughout this time, Christiano did not report the harassment to anyone. Instead, Christiano allegedly gave Duch inappropriate advice, including asking why Duch "didn't . . . just grab [Kohn] and hurt him." J.A. 327.

Duch claims that, during the months that followed, Kohn continued to harass her and she became seriously ill and started avoiding work. Specifically, Duch claims that she became depressed, stopped eating, and experienced suicidal ideations. She also cut and dyed her hair in order to make herself less attractive.

In December 2001, court officer David Joseph replaced Christiano as EEO Liaison. *Duch*, 2007 WL 2230174, at *2. Within a few days of his becoming EEO Liaison, Duch came to Joseph to inform him that she wanted to file a formal complaint about Kohn's conduct. Because he understood that he was "supposed to go through the chief clerk," Joseph contacted Vasti to arrange a meeting for

5

Duch. J.A. 418.

On January 8, 2002, Duch spoke with Vasti about Kohn's alleged conduct. *Duch*, 2007 WL 2230174, at *3. On January 11, 2002, she filed a claim of discriminatory treatment with the OCA's Office of the Special Inspector General for Bias Matters. *Id.* That day, the Special Inspector General began an investigation into Duch's complaint, which came to include interviews of twenty individuals and an administrative hearing. *Id.* On the basis of the investigation, disciplinary charges were brought against Kohn. *Id.* All charges against Kohn were eventually dismissed, however, because Duch failed to submit to cross-examination. *Id.* Duch claims that the reason she did not submit to cross-examination is that she was medically unfit to testify at that time. *Id.* Although the parties do not agree on the precise date or terms of Duch's departure, it is undisputed that she ceased to work for the UCS in December 2002. *Id.*

On January 7, 2004, Duch commenced this action, alleging that Kohn, Jakubek, OCA, and the State of New York had violated Title VII, as well as the NYSHRL and the NYCHRL, by creating a hostile work environment. In an August 3, 2007 Memorandum and Order, the District Court dismissed Duch's claims under the NYSHRL and the NYCHRL as barred by the Eleventh Amendment, and denied as futile Duch's motion to amend her complaint to assert a claim against Jakubek in his individual capacity under the NYSHRL and the NYCHRL. *Duch*, 2007 WL 2230174, at *4, *12. As noted above, the District Court granted summary judgment in defendants' favor on Duch's Title VII claims on the grounds that (1) the OCA provided a reasonable avenue of complaint to its employees, (2) no reasonable fact-finder could conclude that employer defendants had actual or constructive knowledge of the alleged harassment, and (3) even assuming that employer defendants did know or should have known of the alleged harassment, their response was reasonable. *Id.* at *6-11. The District Court also dismissed Duch's Title VII claim against Kohn, declined to exercise pendent

jurisdiction over the state law claims against him, and denied Duch's cross motion for partial summary judgment. *Id.* at *13. Final judgment was entered on August 6, 2007. This timely appeal followed.[1]

## DISCUSSION

We review *de novo* an order granting summary judgment. *See, e.g.*, *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003). Summary judgment is appropriate only if "there is no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

## I. Title VII Hostile Work Environment

In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) that there is a "specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir. 2004) (internal quotation marks omitted).

### A. Abusive Working Environment

"Proving the existence of a hostile work environment involves both objective and subjective elements." *Id.* at 150 (internal quotation marks omitted). Specifically, a plaintiff must show that the misconduct was "'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).

---

[1] On appeal Duch challenges only the District Court's dismissal of her Title VII claims against the employer defendants and its denial of her motion to amend the complaint to add state law claims against Jakubek in his individual capacity. Although Duch's notice of appeal states that she is appealing "each and every part" of the District Court's judgment, J.A. 485, she is no longer pursuing on appeal the dismissal of claims against Kohn, *see* Appellant's Br. 2 n.1. Furthermore, Duch's opening brief raises no objection to the District Court's dismissal of state law claims asserted against the employer defendants. *See* Appellant's Br. 2-3. Accordingly, we conclude that she has waived those claims and we confine our review to the only remaining issues—namely, whether the District Court erred in granting summary judgment on her Title VII claims and in denying her motion to amend the complaint.

Because defendants did not seek, nor did the District Court grant, summary judgment on this ground, we do not address it further. *See Duch*, 2007 WL 2230174, at *5 ("The Court declines to address whether Plaintiff has established the first element of a hostile work environment claim because, for the reasons discussed below, the claim fails as a matter of law on the second element.").

## B.      Imputing the Conduct to the Employer

At issue on this appeal is whether Duch can impute the conduct that created the hostile work environment to her employer. In a situation such as this, "when the harassment is attributable to a co-worker, rather than a supervisor, . . . the employer will be held liable only for its own negligence." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998). Accordingly, Duch must demonstrate that her employer "failed to provide a reasonable avenue for complaint" or that "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (internal quotation marks omitted).

### 1.      Reasonable Avenue of Complaint

The District Court concluded that "no reasonable fact finder could conclude that the Employer Defendants failed to provide Plaintiff with a reasonable avenue of complaint." *Duch*, 2007 WL 223017, at *6. We agree.

Duch argues that the District Court improperly focused on the fact that OCA had a sexual harassment policy in place and that Duch had received a booklet on sexual harassment. *See id.* According to Duch, the District Court failed to consider whether *EEO Liaison Christiano*—the avenue of complaint that Duch chose to pursue—was inadequate because of her alleged lack of training. Christiano testified that "[w]hen the time came that I was supposed to go for the training[,] I couldn't go because we were short of officers and I just couldn't go, so I never got the training." J.A. 404. Moreover, according to Duch, in response to her complaints, Christiano inappropriately inquired why

8

Duch "didn't . . . just grab [Kohn] and hurt him." J.A. 327.

Even assuming that Christiano's response rendered her an inadequate avenue for complaint, the relevant inquiry is not whether a *particular* avenue of complaint was effectively blocked but, rather, whether defendants "provided *no* reasonable avenue of complaint." *See Distasio*, 157 F.3d at 63 (emphasis added) (quoting *Murray v. N.Y. Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995)); *see also Howley*, 217 F.3d at 154 (explaining that employers must "provide *a* reasonable avenue of complaint" (emphasis added)). As Duch herself acknowledges in her brief, according to the Deputy Director of Human Resources at OCA, a victim of discriminatory conduct could seek assistance from at least five different sources *in addition to the EEO Office* (recently renamed the Workforce Diversity Office), including (1) the Inspector General's Office, (2) an Anti-Discrimination Panel member, (3) a "supervisor," (4) "someone in charge," and (5) a representative of the Work Life Assistance Program. Appellant's Br. 15. Accordingly, regardless of Christiano's response, OCA provided numerous alternative avenues of complaint that Duch could, and eventually did, pursue.

We therefore conclude that the District Court did not err in holding that no reasonable jury could conclude that defendants failed to provide Duch with a reasonable avenue of complaint.

### 2. Knowledge and Failure to Act

Despite offering a reasonable avenue of complaint to plaintiff, employer defendants can still be held liable if plaintiff can show that they "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Howley*, 217 F.3d at 154 (internal quotation marks omitted). This standard requires a plaintiff to show that (1) *someone* had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable. With respect to imputing the knowledge of employees to an employer, we have explained that

9

> [a]n official's actual or constructive knowledge of harassment will be imputed to the employer when principles of agency law so dictate. That will be the case when a) the official is at a sufficiently high level in the company's management hierarchy to qualify as a proxy for the company, or b) the official is charged with a duty to act on the knowledge and stop the harassment, or c) the official is charged with a duty to inform the company of the harassment.

*Torres v. Pisano*, 116 F.3d 625, 636-37 (2d Cir. 1997) (internal citations and footnote omitted). For non-supervisory co-workers who "lack[ ] authority to counsel, investigate, suspend, or fire the accused harasser . . . the co-worker's inaction does not spark employer liability *unless that co-worker has an official or strong de facto duty to act as a conduit to management for complaints about work conditions.*" *Id.* (quoting *Lamb v. Household Credit Servs.*, 956 F. Supp. 1511, 1517 (N.D. Cal. 1997)).

Here, Duch seeks to impute knowledge of Kohn's harassment to her employer based on the alleged knowledge of two individuals: Christiano and Jakubek. We review the evidence with respect to each below.

### a. Christiano

It is clear from the record that Christiano had actual knowledge of Kohn's harassment of Duch. As a co-worker without supervisory authority, however, Christiano's knowledge can be imputed to her employer only if she had "an official or strong *de facto* duty to act as a conduit to management for complaints about work conditions." *See id.* at 637 (emphasis omitted). However, we need not decide whether Christiano had an official or *de facto* duty to convey Duch's complaints to management. Even assuming that as EEO Liaison Christiano had such a duty, Duch cannot satisfy the final requirement under *Torres*: that Christiano's response, in light of her knowledge, was unreasonable. *See id.* at 638-39 (holding that plaintiff's supervisor did not act unreasonably by honoring plaintiff's request to keep complaints of harassment confidential).

Although Duch testified that she told Christiano about Kohn's harassment "hoping that Christiano would stop or report the conduct," 2007 WL 2230174, at *2 (emphasis removed),

10

Christiano's *uncontradicted* testimony was as follows: "I said do you want me to tell [Jakubek] and [Duch] said *absolutely not*," J.A. 165 (emphasis added).[2] We must therefore determine whether Christiano acted reasonably by keeping that information confidential, notwithstanding Duch's unspoken expectations.

In *Torres v. Pisano* we were presented with nearly identical circumstances and held that a supervisor did not breach his duty to remedy harassment by honoring an employee's request to keep her complaint confidential. 116 F.3d at 638-39. We explained that

> the law will not presume in every case that harassed members of Title VII's protected classes do not know what is best for themselves and cannot make reasonable decisions to delay—at least for a time—pursuing harassment claims, perhaps for privacy or emotional reasons, until they are ready to do so.

*Id.* at 639. We also noted, however, that this "is not a question that we can answer categorically" and that "[t]here is certainly a point at which harassment becomes so severe that a reasonable employer simply cannot stand by, even if requested to do so by a terrified employee." *Id.*

Duch argues that the conduct to which she was allegedly subjected passes that "point" at which an employer is compelled to act regardless of the expressed wishes of the harassed employee. We disagree. Although Duch testified that she told Christiano about most incidents involving Kohn, and although the harassment was allegedly causing serious harm to plaintiff—even leading her to contemplate suicide—there is no evidence that Christiano was aware of the psychological toll that Kohn's harassment was allegedly inflicting on Duch. *See, e.g.*, J.A. 409 ("I didn't feel Karen [Duch] was threatened whatsoever. She was very adamant that she was able to handle this herself. I believe that she could."); *see also Torres*, 116 F.3d at 639 (finding defendant employer response was reasonable where the victim's complaints "did not come close to conveying the full extent of the abuse" to defendant).

---

[2] Duch asserts that the District Court erred in relying on Christiano's testimony because Duch never admitted to making the statement in question. Appellant's Br. 21 n.5. The critical point, however, is that she has not presented any evidence *contradicting* the evidence put forth by defendants. *See* Fed. R. Civ. P. 56(e)(2) (explaining that a party opposing summary judgment must "set out specific facts showing a genuine issue for trial").

11

Based on the evidence in the record, no reasonable jury could conclude that Christiano breached a duty to Duch and, consequently, defendants cannot be held liable on account of Christiano's inaction.

### b.       Jakubek

Unlike Christiano, the critical question with respect to Jakubek is whether he had actual or constructive knowledge that Duch was being sexually harassed. If he did, there is no doubt that his knowledge can be imputed to the remaining employer defendants because Jakubek was Kohn's supervisor and, as such, was "charged with a duty to act on the knowledge and stop the harassment." *Torres*, 116 F.3d at 636-37 ("[W]here the person who gained notice of the harassment was the supervisor of the harasser (*e.g.*, had the authority to hire, fire, discipline, or transfer him), knowledge will be imputed to the employer on the ground that the employer vested in the supervisor the authority and the duty to terminate the harassment.").[3] We therefore turn our attention to the evidence from which, Duch argues, a jury could infer that Jakubek "knew, or in the exercise of reasonable care should have known, about the harassment." *See Howley*, 217 F.3d at 154 (internal quotation marks omitted).

From the record evidence, viewed in the light most favorable to plaintiff and with all reasonable inferences drawn in her favor, a jury could find the following: (1) Jakubek knew that Duch sought a change in her work schedule for a time when she was scheduled to work alone with Kohn; (2) Jakubek learned from other sources that Duch sought a schedule change to avoid working with Kohn; (3) Jakubek asked Kohn about it, and Kohn admitted that he had done or said something he "should not have," J.A. 81; (4) Jakubek knew that Kohn had engaged in sex-related misconduct toward females in the past; (5) Jakubek told Kohn, in reference to Kohn's conduct toward Duch, that he should "cut it out [and] grow up," *id.*; (6) Jakubek knew that the subject of working with Kohn caused Duch to

---

[3] Because Jakubek's knowledge is clearly imputable to the employer on this ground, we need not decide whether he was also an official of a "sufficiently high level in the [employer's] management hierarchy to qualify as a proxy for the [employer]." *See Torres*, 116 F.3d at 636.

become emotional, "teary and red," and to respond, trying to maintain her composure, "I can't talk about it," J.A. 81-82; (7) Jakubek answered, "That's good because I don't want to know what happened," J.A. 82; and (8) Jakubek then agreed to change Duch's schedule for the specific purpose of avoiding her having to work alone with Kohn at night.

Based on this aggregation of facts, a jury could reasonably find that Jakubek strongly suspected that it was sexual harassment on Kohn's part that was responsible for Duch's emotional reaction,[4] that Jakubek understood the issue was ongoing, *cf. Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 250 (2d Cir. 1995) (holding that an official did not have constructive knowledge because, "though [he] must have viewed [the conduct] as having sexual overtones in light of [the harasser's] past behavior," there was no suggestion that he had knowledge that the "misbehavior was part of [an] *ongoing* course of harassment" (emphasis added)), that the indications of sexual misconduct were sufficiently strong that Jakubek had a duty to make at least a minimal effort to discover whether Kohn had engaged in sexual harassment, and that instead of encouraging Duch to discuss the problem, Jakubek *discouraged* her from revealing the full extent and nature of the harassment by stating in response to her reticence that he did not want to know what happened. Given the foregoing, we hold that a reasonable jury could conclude that Duch's employer had at least constructive knowledge of the sexual harassment directed at her.

In so holding we do not announce a new rule of liability for employers who receive nonspecific complaints of harassment from employees. We merely recognize that, under the existing law of this Circuit, when an employee's complaint raises the specter of sexual harassment, a supervisor's purposeful ignorance of the nature of the problem—as Jakubek is alleged to have displayed—will not

_____

[4] Although Jakubek expressed that Kohn told him that the issue between Kohn and Duch arose from his having told her that "although she was book smart, she lacked common sense," J.A. 36, the fact that Jakubek knew of Kohn's prior sexual misconduct, that he told Kohn to "cut it out, to grow up," J.A. 81, and that he intervened to avoid having Duch and Kohn work alone together at night, could lead a reasonable jury to disbelieve Jakubek's exculpatory claim and to conclude that Jakubek knew or suspected that Kohn had engaged in sexual misconduct and contrived not to learn the facts.

13

shield an employer from liability under Title VII.  Accordingly, notwithstanding the District Court's observation that Jakubek "was never told of, and did not witness, the alleged harassment," *Duch*, 2007 WL 2230174, at *7, we hold that a reasonable jury could conclude that Jakubek "knew, or in the exercise of reasonable care should have known, about the harassment."  *See Howley*, 217 F.3d at 154 (internal quotation marks omitted).

We next consider the adequacy of the employer's response.

### c.      Whether the Employer Took Appropriate Remedial Action

In *Distasio v. Perkin Elmer Corporation*, we held that

> [w]hether [a] company's response was reasonable has to be assessed from the totality of the circumstances.  Factors to be considered in this analysis are the gravity of the harm being inflicted upon the plaintiff, the nature of the employer's response in light of the employer's resources, and the nature of the work environment.

157 F.3d at 65.  "If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and *prompt*, summary judgment is inappropriate."  *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998) (emphasis added), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 542 U.S. 742 (1998); *see, e.g.*, *Kracunas v. Iona Coll.*, 119 F.3d 80, 88 (2d Cir. 1997) (holding that a district court erred in concluding that an employer's response, taken four to six months after the employer learned of the allegations, was appropriate as a matter of law), *abrogated on other grounds by Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1989), *and Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999).

The District Court concluded that "[a]ssuming *arguendo* that the Employer Defendants knew or should have known of the alleged harassment . . . their response was reasonable."  *Duch*, 2007 WL 2230174, at *10.  The District Court based this conclusion on the following: (1) Jakubek changed Duch's schedule when asked and (2) when Duch filed a formal complaint with the Special Inspector General for Bias Matters, an investigation was commenced.  *Id.*

14

In light of our holding that a jury could find that defendants had knowledge of the harassment in October 2001—when Duch first requested a schedule change from Jakubek—we conclude that a jury could also find that defendants' response was unreasonable. Although Jakubek did adjust the schedule so that Duch and Kohn would not be working together without other court officers on duty, Kohn's harassment persisted and escalated during the months that followed. A formal investigation of Kohn was not commenced until January 2002, after Duch informed another co-worker of the harassment and *three months* after the date upon which a jury could find that Jakubek first learned of the harassment. Under these circumstances, we cannot say, as a matter of law, that defendants' response was "effectively remedial and prompt." *Gallagher*, 139 F.3d at 348.

## II. Plaintiff's Motion to Amend the Complaint

Duch's final argument on appeal is that the District Court erred in denying her motion to amend the complaint to include claims against Jakubek in his individual capacity under the NYSHRL and NYCHRL. The District Court denied Duch's motion on the ground that amending the complaint would be futile because, *inter alia*, "no reasonable fact-finder could conclude that Jakubek should have known about the harassment through the exercise of reasonable care" and therefore "[p]laintiff cannot plead facts, which if believed, would be sufficient to show that Jakubek failed to take appropriate investigative or remedial measures." *Duch*, 2007 WL 2230174, at *12. Because we hold that a reasonable jury *could* conclude that Jakubek had constructive knowledge of the harassment, we vacate the District Court's judgment insofar as it denied Duch's motion to amend.

### CONCLUSION

In accordance with the foregoing, we **AFFIRM** the order of the District Court insofar as it held (1) that Duch was not deprived of all reasonable avenues of complaint and (2) that defendants cannot be liable based on information conveyed to Christiano. We **VACATE** the order of the District

15

Court insofar as it (1) held that no reasonable jury could find that Jakubek knew or should have known of the harassment directed at Duch, (2) held that no reasonable jury could find that defendants failed to take appropriate remedial action, and (3) denied Duch's motion to amend as futile. We **REMAND** the cause for further proceedings consistent with this opinion.