23-7976
*Newbury v. City of Niagara Falls*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of January, two thousand twenty-five.

PRESENT:
>  BETH ROBINSON,
>  ALISON J. NATHAN,
>>  *Circuit Judges*,
>  VINCENT L. BRICCETTI,
>>  *District Judge.**

———————————————————————

ASHLEY NEWBURY,

>  *Plaintiff-Appellant*,

>  v.                                                                              No. 23-7976-cv

CITY OF NIAGARA FALLS,

>  *Defendant-Appellee.†*

———————————————————————

_____

* Judge Vincent L. Briccetti, of the United States District Court for the Southern District of New York, sitting by designation.

† The Clerk is respectfully instructed to amend the caption as set forth above.

FOR APPELLANT:                    HARVEY P. SANDERS, Sanders & Sanders, Cheektowaga, NY.

FOR APPELLEE:                     PETER H. WILTENBURG, Bond, Schoeneck & King, PLLC, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Sessions, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on November 13, 2023, is **AFFIRMED**.

Plaintiff-Appellant Ashley Newbury appeals from the grant of summary judgment in favor of Defendant-Appellee City of Niagara Falls (the "City"). Newbury claims that when she was undergoing training as a newly hired employee of the City's Police Department, the City violated Title VII and the New York State Human Rights Law ("NYSHRL") by discriminating against her because of her sex and retaliating against her when she complained of that purported discrimination. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

## I.  BACKGROUND[1]

Newbury provisionally joined the Niagara Falls Police Department ("NFPD") as a recruit in early 2016 and was the only woman to attend the spring 2016 session of the Niagara County Law Enforcement Academy ("NCLEA")—a police training academy jointly run by NFPD and the Niagara County Sheriff's Office ("NCSO").  Recruits from the NFPD, NCSO, and other law enforcement agencies in New York State were Newbury's classmates at NCLEA.

While at the NCLEA, Newbury struggled in learning practical hands-on skills related to physical confrontations in the field such as handcuffing, knife defenses, or takedowns.  No fewer than seven NCLEA instructors consistently documented Newbury's poor performance and lack of progress in this realm throughout her time at the Academy.  In a series of final "Reality Based Training" exercises, NCLEA instructors observed Newbury err in ways they concluded would make her a dangerous addition to the police force.[2]  App'x 93– 94.  For instance, while attempting to subdue a physically aggressive subject,

---

[1]  These facts are drawn from the summary judgment record and are either undisputed or viewed in the light most favorable to Newbury.  *See Delaney v. Bank of America Corp.*, 766 F.3d 163, 167 (2d Cir. 2014).

[2]  In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

Newbury once "place[d] her handgun on the ground instead of holstering it" and inadvertently "shot her partner" with simulated ammunition. *Id.* at 93. Ultimately, NFPD Detective John Faso, who directed the NCLEA, wrote to NFPD Superintendent Bryan DalPorto that he assessed Newbury to be "a liability to herself, other Law Enforcement[,] and [] the public if placed on duty." *Id.* at 94.

DalPorto fired Newbury before Newbury graduated from the NCLEA, even though—as a formal matter—Newbury had completed all of the Academy's requirements. When he fired Newbury, DalPorto called her a "piece of shit," App'x 382, and said he "wasn't going to let someone stupid like [her] get one of his boys hurt on the streets," *id.* at 205.

The evidence also reflects that, throughout academy training, Newbury experienced other episodes of abusive treatment by both her instructors and her fellow recruits at the NCLEA. For instance, Newbury's fellow recruits or trainers called her a "bitch," App'x 196, and told her that she looked like an "idiot" when her mascara ran, *id.* at 381. Other instances were not overtly connected to Newbury's sex. For instance, one instructor held a knife to Newbury's face to discipline her for mishandling a firearm during training, and members of her recruit class sent a group text saying "fuck you" directed at recruits (including

4

Newbury) who did not join the group at a bar after training. *Id.* at 199–200. Newbury testified that none of the male recruits was treated so harshly.

Before beginning at the NCLEA, Newbury received a copy of the City's workplace harassment and discrimination policies, including an overview of the City's internal complaint process. But Newbury never made a formal complaint to the City against any of the NCLEA instructors or recruits. Instead, following what the NCLEA handbook described as the "chain of command," Newbury complained in text messages and one-on-one conversations to Keith Kennedy, a NCSO recruit and fellow NCLEA student who had been selected as the class president for that spring's recruit class. App'x 376. The parties do not dispute that Kennedy never conveyed Newbury's complaints to anyone at NFPD or the City.

Newbury brought timely Title VII and NYSHRL claims against the City. After discovery, the City moved for summary judgment on all of Newbury's claims. The district court granted the City's motion in its entirety. *Newbury v. City of Niagara Falls*, No. 1:17-cv-754, 2023 WL 7496493, at *12 (W.D.N.Y. Nov. 13, 2023). Specifically, the district court concluded that, although Newbury may have experienced a hostile work environment at the NCLEA, none of the

mistreatment could be imputed to the City as required for Title VII and NYSHRL liability. Concerning claims of disparate treatment, the district court concluded that the City had made an adequate showing that Newbury was fired for legitimate non-discriminatory reasons, which Newbury did not sufficiently rebut under the third step of the *McDonnell-Douglas* framework. Finally, the district court concluded that the City could not be liable for improper retaliation because no one at the City knew that Newbury had ever complained of harassment and because Newbury's complaints did not cause her termination from NFPD.

## II. DISCUSSION

We review the district court's grant of summary judgment without deference. *See Weinstock v. Columbia University*, 224 F.3d 33, 40 (2d Cir. 2000). The same legal standards govern the Title VII and NYSHRL claims on this appeal. *See Summa v. Hofstra University*, 708 F.3d 115, 123–24, 129 (2d Cir. 2013); *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609–10 (2d Cir. 2006).[3]

---

[3] There may be some tension between *Summa*'s observation that "[h]ostile work environment claims under both Title VII and the NYSHRL are governed by the same standard," 708 F.3d at 123–24 (citing *Schiano*, 445 F.3d at 609), and some statements about the scope of employer liability set forth in New York case law. The New York Court of Appeals has stated that an "employer cannot be held liable [under the NYSHRL] for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004). However, in that same decision the Court

6

*A. Hostile Work Environment*

"In order to prevail on a hostile work environment claim, a plaintiff must make two showings: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment and (2) that there is a specific basis for imputing the conduct creating the hostile work environment to the employer." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009). An employer will be strictly liable for harassment perpetrated by one of its supervisors. *Torres v. Pisano*, 116 F.3d 625, 633–34 (2d Cir. 1997). Supervisors, in turn, are employees empowered to "effect a

of Appeals suggested that mere "knowledge or acquiescence" of the employer is enough to support liability for an unlawful discriminatory practice. *Id*. ("[T]he use of racial slurs and insults by a supervisor without the knowledge or acquiescence of the employer does not constitute an unlawful discriminatory practice [] under the [NYSHRL]"); *id.* ("Plaintiff has failed to offer any evidence that the [defendant] knew of, let alone condoned or acquiesced in, the epithets."); *see also Doe v. Bloomberg, L.P.*, 36 N.Y.3d 450, 455 (2021) (quoting the "encouraging, condoning, or approving" standard).

If the NYSHRL applies a more exacting standard than Title VII—a question we need not reach—Newbury's NYSHRL claim would even more clearly fail. The record does not support a reasonable inference that the City "encourag[ed], condon[ed], or approv[ed]" of any harassment by NCLEA instructors and co-recruits. *Forrest*, 3 N.Y.3d at 311. Nor could a rational juror conclude that Deputy Grapes had the requisite level of responsibility such that his conduct may be imputed to the City without proof of knowledge and acquiescence. *See, e.g.*, *Franco v. Hyatt Corp.*, 189 A.D.3d 569, 570 (1st Dep't 2020) ("Proof of condonation and acquiescence is not necessary where discriminatory conduct is perpetrated by a high-level managerial employee or someone sufficiently elevated in the employer's business organization to be viewed as its proxy.").

significant change in employment status" like hiring or firing.  *Vance v. Ball State University*, 570 U.S. 421, 431 (2013).  But "when the harassment is attributable to a coworker, rather than a supervisor, the employer will be held liable only for its own negligence."  *Duch*, 588 F.3d at 762.

### i.    Superintendent DalPorto

Superintendent DalPorto is the only City employee who had supervisory authority over Newbury, because he was the only City employee involved here with the power to effect a significant change in Newbury's employment status.  *Vance*, 570 U.S. at 431.  Accordingly, the City will be strictly liable for DalPorto's conduct if it amounts to "severe or pervasive" harassment that could "alter the conditions of [Newbury's] employment and create an abusive working environment."  *Duch*, 588 F.3d at 762.  DalPorto's conduct in this case is limited to calling Newbury a "piece of shit," App'x 382, and telling her that he would not "let someone stupid like [her] get one of his boys hurt on the streets," *id*. at 205.  We conclude in the context of the undisputed facts here that these two comments are insufficient to create a hostile work environment under Title VII.

A hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or

8

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "Isolated incidents of harassment ordinarily do not rise to this level," but "we have recognized that a single act can create a hostile work environment" if it was "extraordinarily severe." *Banks v. General Motors, LLC*, 81 F.4th 242, 262 (2d Cir. 2023). "Harassing conduct need not be motivated by sexual desire" to establish a hostile work environment claim, "so long as [the conduct] was motivated by gender." *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) (emphasis omitted).

DalPorto's comments were not so extraordinarily severe that they transformed Newbury's workplace. DalPorto made comments during a single isolated outburst.[4] DalPorto's conduct was not physically threatening. *See Banks*, 81 F.4th at 262-64. And DalPorto did not demean Newbury in front of fellow recruits or colleagues in a way that would have made it more difficult for

---

[4] The district court noted that DalPorto's comments "arguably related to performance rather than gender." *Newbury v. City of Niagara Falls*, No. 1:17-cv-754, 2023 WL 7496493, at *12 (W.D.N.Y. Nov. 13, 2023). However, Newbury is entitled at summary judgment to the reasonable inference that DalPorto's reference to "his boys" evinced some discriminatory animus against women. Our decision today accordingly rests on our assessment of the evidence concerning the severity of DalPorto's remarks, and we express no view on whether they were tainted by animus against women. *See Banks*, 81 F.4th at 262.

9

Newbury to do her job. *Cf. Howley v. Town of Stratford*, 217 F.3d 141, 154–55 (2d

Cir. 2000) (concluding a reasonable jury could find a single incident created a

hostile work environment when the incident took place in front of colleagues).

Even in the light most favorable to Newbury, DalPorto's two comments—

without more—cannot be characterized as extraordinarily severe. *See Banks*, 81

F.4th at 262.

> ii.   NCLEA Instructors and Recruits

We reject Newbury's argument that NCSO Deputy Shawn Grapes was

Newbury's supervisor for purposes of Title VII. As an employee of the county

sheriff's office, Grapes did not work for the City and had no authority to hire,

fire, reassign or otherwise "take tangible employment actions against" Newbury.

*Vance*, 570 U.S. at 431. Likewise, her fellow recruits were not her supervisors. So

the City is not directly liable for their conduct without more. *Duch*, 588 F.3d at

762.

The City can also be liable if it was negligent when it failed to respond to

discriminatory harassment against Newbury. *See id.* "This standard requires a

plaintiff to show that (1) *someone* had actual or constructive knowledge of the

harassment, (2) the knowledge of this individual can be imputed to the

employer, and (3) the employer's response, in light of that knowledge, was unreasonable." *Id.* at 763.

Newbury argues that she satisfied this standard by reporting harassment to the NCLEA class president, Keith Kennedy, and that Kennedy should have passed those complaints on to the NCLEA's co-directors or other officials empowered to intervene on Newbury's behalf. But, "[f]or non-supervisory co-workers who lack authority to counsel, investigate, suspend, or fire the accused harasser[,] the co-worker's inaction does not spark employer liability *unless that co-worker has an official or strong de facto duty to act as a conduit to management for complaints about work conditions.*" *Id.* (emphasis in original).

But the record is clear that Kennedy had no official duty or *de facto* duty (meaning duty "in effect") to escalate Newbury's complaints of discriminatory harassment to the NCLEA directors. Newbury places too much weight on two sentences within the NCLEA Rules and Regulations, which describe the "Class President" as above "Recruit" in the chain of command and designate the class president as "the official representative of the class." App'x 62, 65. Such vague descriptions of the class president's role do not support a reasonable inference

11

that the NCLEA class president had an official or effective duty to convey complaints of harassment to City personnel.

Further, Newbury's assumption that it was Kennedy's responsibility to handle complaints of discrimination is in direct tension with the City's comprehensive workplace harassment policy, which included detailed instructions on how to initiate the official complaint process, where to direct an official complaint, and who is authorized to provide unofficial guidance on the complaint process. *See* App'x 54–57. Neither the City nor NCLEA officials suggested to Newbury that the NCLEA chain of command superseded the City's official published complaint process.

Our conclusion is further supported by Newbury's own conversations with Kennedy, which show that neither Kennedy nor Newbury thought Kennedy had a duty to escalate Newbury's concerns. Newbury never responded to Kennedy's offer to bring her complaints to the NCLEA directors, and instead said that "hopefully" the situation would "get better" if Kennedy himself spoke to the recruits. App'x 177.

Newbury's only evidence to the contrary establishes that she was told that Kennedy could speak to NCLEA directors on her behalf if she had difficulty

12

adjusting to the NCLEA.  *See, e.g.*, App'x 77, 221.  But in light of the City's workplace harassment policy that provided ample official pathways for Newbury to report misconduct—and the above conversations with Kennedy— Newbury's evidence would not permit a reasonable jury to conclude that she reasonably understood that Kennedy's role as class president entailed an official or *de facto* responsibility to escalate allegations of serious mistreatment in the workplace.  We therefore cannot impute Kennedy's knowledge to the City.

### B.  Disparate Treatment

We evaluate Newbury's claim of sex discrimination in connection with her termination under a three-part burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Newbury carried her initial burden by demonstrating circumstances that "give rise to an inference of discrimination."  *Weinstock*, 224 F.3d at 42.  At this initial stage, Newbury's burden is minimal, and Newbury proceeds to the second step simply by producing evidence that she was the only woman in her recruit class at NCLEA, and that she was the only recruit discharged.  *See id.*

"[T]he burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action."  *Bart v. Golub Corporation*, 96

F.4th 566, 570 (2d Cir. 2024).  Evidence of Newbury's poor performance during training is a legitimate, non-discriminatory reason that Newbury was terminated, and the burden therefore shifts back to Newbury to "produce admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer that the [City's] employment decision was more likely than not based in whole or in part on discrimination."  *Id.* at 576.  Newbury has not done so.

Newbury does not argue that the NCLEA instructors' reports of her poor performance were inaccurate—or that Newbury did not, in fact, struggle throughout the training process.  Rather, Newbury points to male recruits who performed worse than her on certain aspects of the NCLEA training regimen, like the physical fitness test and written examinations.  But no reasonable juror would find that Newbury's male counterparts were similarly situated to Newbury because their respective training deficiencies were not "of comparable seriousness."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).  The failure to achieve a certain average on written tests or to complete a 1.5-mile run at a certain pace is far less serious than the training deficiencies that instructors

14

observed with Newbury, which included placing her firearm, unsecured, on the ground and accidentally shooting her partner in a simulation.

We do not accept Newbury's view that she was treated differently from *similarly situated* male recruits, and we accordingly conclude that Newbury has failed to meet her burden to rebut the City's showing that it fired Newbury for a legitimate, nondiscriminatory reason. *See Bart*, 96 F.4th at 570.

### C. Retaliation

We evaluate Newbury's claims that the City retaliated against her for reporting discrimination under the same three-part burden-shifting framework that applied to Newbury's disparate treatment claims. *Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 (2d Cir. 2013) (applying *McDonnell Douglas* to Title VII retaliation claims). Newbury's claims of retaliation fail at the first step, which requires Newbury to show that "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa*, 708 F.3d at 125.

Newbury's only claimed protected activity was complaining to Kennedy in his capacity as class president. Though Newbury may rely on an employer's

15

"general corporate knowledge" to establish an employer's awareness of protected activity, she has adduced no evidence that *any* agent of the City knew that she had complained to Kennedy about discrimination in her working conditions. *Kwan*, 737 F.3d at 844. As we have already noted, Kennedy worked for the county sheriff—not the City—and did not have any duty to pass Newbury's complaints up the chain of command at NCLEA.

Moreover, even if Newbury had established the elements of a retaliation claim, for the reasons set forth above, in the face of the undisputed evidence of her performance deficiencies, she has not produced evidence to support the inference that she would not have been terminated but for improper retaliation. *See Kwan*, 737 F.3d at 845 (describing but-for standard of causation in retaliation claims).

* * *

For the above reasons, the District Court's judgment is **AFFIRMED**.

                        FOR THE COURT:
                        Catherine O'Hagan Wolfe, Clerk of Court