*Van Vorst v. Lutheran Healthcare*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of December, two thousand twenty-one.

PRESENT:
> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> > *Circuit Judges*,
> J. PAUL OETKEN,
> > *District Judge.**

———————————————————————

ANDREA L. VAN VORST, KENNETH MAHNKEN, YVETTE SOTO, MARTIN J. WEINER,

> *Plaintiffs-Appellants*,

> v.                                No. 21-4

LUTHERAN HEALTHCARE, DBA LUTHERAN MEDICAL CENTER,

> *Defendant-Appellee.*

———————————————————————

---

* Judge J. Paul Oetken, of the United States District Court for the Southern District of New York, sitting by designation.

FOR PLAINTIFFS-APPELLANTS:    ANDREW ROZYNSKI (David John Hommel, *on the brief*), Eisenberg & Baum, LLP, New York, NY.

FOR DEFENDANT-APPELLEE:    ROY W. BREITENBACH (Svetlana K. Ivy, Katerina Marie Kramarchyk, *on the brief*), Harris Beach PLLC, Uniondale, NY, and Pittsford, NY.

Appeal from an order of the United States District Court for the Eastern District of New York (Korman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order entered on December 14, 2020, is **AFFIRMED**.

Plaintiffs-Appellants are deaf individuals who allege that Defendant-Appellee Lutheran Healthcare (the "Hospital"), during plaintiffs' numerous visits to the Hospital for medical care from 2012 through 2016, failed to provide them with accommodations required under the New York City Human Rights Law ("NYCHRL").[1] Following a two-week trial, a jury rendered a verdict in the Hospital's favor. Plaintiffs appeal from the district court's denial of their posttrial motion for judgment as a matter of law or, in the alternative, for a new trial. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

Section 8-107(15) of the NYCHRL requires covered entities,[2] including the Hospital, to provide a "reasonable accommodation" to enable persons with disabilities to "enjoy the right or rights in question"—that is, to use or enjoy the entities' services. N.Y.C. Admin. Code § 8-107(15); *see In re Comm'n on Hum. Rts. ex rel. Stamm v. E & E Bagels, Inc.*, OATH

---

[1] Plaintiffs also brought claims under Title III of the Americans with Disabilities Act ("ADA") and section 504 of the Rehabilitation Act. The parties agreed to submit to the jury only the cause of action under the NYCHRL: plaintiffs reasoned that "it is the most liberal standard and provides all the relief that [plaintiffs] were seeking." Appellants' Br. at 9.

[2] As set forth in section 8-107(4), the law covers "any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation." N.Y.C. Admin. Code § 8-107(4).

Index No. 803/14, 2016 WL 1644879, at *6 (N.Y.C. Comm'n Hum. Rts. Apr. 20, 2016) (defining the "right" in the public-accommodation context as the ability "to use or enjoy the public accommodation"). The statute defines "reasonable accommodation" as "such accommodation that can be made that does not cause undue hardship in the conduct of the covered entity's business," placing on "[t]he covered entity . . . the burden of proving undue hardship." N.Y.C. Admin. Code § 8-102; *see Phillips v. City of New York*, 884 N.Y.S.2d 369, 378 (App. Div. 1st Dep't 2009) ("[U]nlike the ADA, there are no accommodations [under the NYCHRL] that may be 'unreasonable' if they do not cause undue hardship."). Plaintiffs maintain that the Hospital discriminated against them by treating them less well than hearing individuals and failing to provide the required reasonable accommodation.[3]

### 1. Rule 50(b) motion for judgment as a matter of law

We review *de novo* the denial of a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). The applicable standard is high: a court may grant a Rule 50(b) motion and set aside a jury's verdict only where "there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 112 (2d Cir. 2015) (internal quotation marks and alterations omitted). "In short, a Rule 50 motion may be granted only if the court . . . concludes that a

---

[3] In Count IV of their complaint, plaintiffs asserted a single cause of action under the NYCHRL, invoking both section 8-107(4), which prohibits disparate treatment of individuals with disabilities, and section 8-107(15), which requires covered entities to provide reasonable accommodations to individuals with disabilities such as would allow the individuals to use or enjoy their services. J.A. 57, ¶ 237; *see* N.Y.C. Admin. Code § 8-107(4), (15); *see generally, e.g.*, *Roberman v. Alamo Drafthouse Cinemas Holdings, LLC*, 67 Misc. 3d 182, 184–87 (N.Y. Sup. Ct. 2020) (in public-accommodation context, separately addressing "reasonable accommodation" claim under section 8-107(15) and "disparate treatment" claim under section 8-107(4)). No party appears to have argued before the district court, nor did either argue before this Court, that plaintiffs stated two separate causes of action requiring application of different standards. Nor does the record reflect that any party argued that the jury should have considered them separately: the jury forms simply called on the jury to determine whether "the Hospital discriminated against" each plaintiff, as the court defined "discriminated" in its jury instructions. We therefore do not address the two provisions separately here.

reasonable juror would have been *compelled* to accept the view of the moving party." *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (internal quotation marks omitted).

In their complaint, plaintiffs sought damages for the Hospital's alleged failures to "provide [plaintiffs] with effective accommodations for [their] disability of deafness despite [their] requests."[4] J.A. 31, 35, 44, 46. Following the jury's December 2019 verdict rejecting these allegations, plaintiffs advanced a new legal theory in their posttrial motions and pursue it again now on appeal: they urge us to hold that the NYCHRL required the Hospital not merely to provide "reasonable accommodations" necessary for effective communication between plaintiffs and their treatment providers, but to provide every deaf patient with a live American Sign Language ("ASL") interpreter on every visit, regardless of the patient's fluency in English or facility in lipreading and writing, and regardless of whether the patient requested an interpreter.[5] In other words, according to plaintiffs, and notwithstanding ample evidence that effective communication between medical personnel and the patient by other means could and did regularly occur, the only "reasonable accommodation" for any deaf patient under the NYCHRL is a live ASL interpreter, subject only to "rare exceptions." Appellants' Br. at 30 n.7.

No state or federal court has interpreted the NYCHRL as creating such a strict liability standard for healthcare providers serving deaf individuals, and we decline to do so here.[6] We identify no reversible error in the standard set forth in the jury instructions, which

---

[4] In their complaint, plaintiffs also sought "to compel [the Hospital] to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from [the Hospital's] services." J.A. 29. As the district court observed, however, Lutheran Medical Center "merged with NYU Langone in 2016—after the treatment about which plaintiffs complained—and NYU Langone changed the complained-of policy, obviating any prospect of injunctive relief." *Van Vorst v. Lutheran Healthcare*, No. 15-cv-1667, 2020 WL 7343799, at *13 (E.D.N.Y. Dec. 14, 2020). On appeal, plaintiffs do not contest this conclusion.

[5] Plaintiffs' arguments suggest that, by a "live" ASL interpreter, they mean either an in-person interpreter or a remote interpreter on video in real time, and that either would satisfy the standard they assert the NYCHRL to require. *See, e.g.*, Appellants' Br. at 30, 58; J.A. 118.

[6] Indeed, imposition of a strict liability standard for any one type of disability appears to stand in tension with the additional statutory mandate that a public accommodation "engage in a cooperative dialogue within a

4

plaintiffs proposed in part and which they now attempt to challenge. Those instructions, taken as a whole, adequately informed the jury that the Hospital had an obligation under the NYCHRL to ensure effective communication with patients on an individual basis and to consider each patient's preferred or requested communication method. *See, e.g.*, J.A. 169 ("Effective communication is a two-way street, requiring all parties to be able to receive information from, and convey information to, one another."); J.A. 170 ("The law provides that the type of auxiliary aids will vary depending upon the circumstances . . . in accordance with the method of communication used by the individual . . . .").

In any event, the jury's verdict that the Hospital did not discriminate against any plaintiff was eminently reasonable in light of the telling evidence presented at trial. Referring to the testimony of their expert witness as "unrebutted," plaintiffs avoid acknowledging on appeal that the cross-examination inflicted substantial damage on the credibility of their witnesses, including their expert. Appellant's Br. at 54–56. The Hospital's counsel elicited testimony from plaintiffs that strongly rebutted their expert's assertion that plaintiffs' English reading levels ranged from the first- to the fourth-grade level.[7] Moreover, at trial, all four plaintiffs either were compelled to change their testimony when confronted with

---

reasonable time with a person who has requested an accommodation or who the covered entity has notice may require an accommodation related to disability as provided in [section 8-107(15)]." N.Y.C. Admin Code § 8-107(28). The statute defines the requisite "cooperative dialogue" as "the process by which a covered entity and a person entitled to an accommodation . . . engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." *Id.* § 8-102. This statutory provision suggests that entity must take into account a patient's preferred accommodation, but that the accommodation that is "reasonable" and required by the statute is appropriately determined on an individual basis.

[7] *See, e.g.*, J.A. 1619–20, 1622–23, 1715–19 (Martin Wiener testifying that he used to spend every morning reading newspapers on politics and sports; he reads the magazine *Model Aviation*; he used to work at a printer, where he was required to read backwards; and he provided detailed errata and substantive comments on his deposition transcript in this case, which the jury specifically requested during its deliberation); J.A. 906–09, 912 (Andrea Van Vorst testifying that she communicated exclusively through English lipreading and writing in grade school, with her immediate family members, in her job as an encoder at a bank, and with a home health aide in 2016; and that she watches TV with closed captions); J.A. 1330–31, 1345–47, 1367–69 (Kenneth Mahnken testifying that he communicates through lipreading with his parents, siblings, and roommate; he reads the newspaper every morning, reads magazines, and watches TV with closed captions; and he communicates with his primary care doctor through lipreading); J.A. 1437–39 (Yvette Soto testifying that she could not remember whether she was taught in ASL in grade school but she had held jobs in retail and at a library, where she alphabetized books).

5

conflicting evidence—for example, hospital records showing that they received ASL interpretation services for consent forms that they claimed they could not read or understand—or stated that they simply could not recall whether they had in fact received accommodations that they had claimed in their pleadings not to have received. Although plaintiffs introduced into evidence seventy consent forms that they claim to have signed without giving their informed consent and rest their claims for damages on this evidence, only four of those forms were referenced during the trial testimony. In addition, plaintiffs either were not asked whether they understood the forms or were impeached regarding their testimony about whether they received effective communication regarding the respective medical procedures before signing those forms.

In light of the significant record evidence contradicting plaintiffs' allegations and substantiating the Hospital's position that it provided reasonable accommodations to these individual plaintiffs, we conclude that no "reasonable juror would have been *compelled* to accept" plaintiffs' claims against the Hospital. *Cash*, 654 F.3d at 333. We therefore affirm the district court's denial of plaintiffs' Rule 50(b) motion for judgment as a matter of law.

### 2. Rule 59 motion for new trial

We review a district court's denial of a motion for a new trial under Federal Rule of Civil Procedure 59 for abuse of discretion. *Song v. Ives Labs.*, 957 F.2d 1041, 1047 (2d Cir. 1992). "A district court has abused its discretion if it has (1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 146 (2d Cir. 2012) (internal quotation marks omitted). In adjudicating a Rule 59 motion, the court must disregard any errors or defects that, in all likelihood, did not "affect[] the outcome of the case." *Id.* (internal quotation marks omitted). As relevant here, a district court may award a new trial if it determines that the jury reached a verdict that is against the weight of the evidence—that is, only if a verdict is "seriously erroneous" or would result in a miscarriage of justice. *See Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417–18 (2d Cir. 2012). Further, on a Rule 59 motion, courts must accord a "high degree of deference . . . to the jury's evaluation of witness credibility." *ING Glob. v. United*

*Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (internal quotation marks omitted). "Absent a showing of prejudice, the jury's verdict should not be disturbed." *Chin*, 685 F.3d at 162 (internal quotation marks and alteration omitted).

Plaintiffs fail to demonstrate that the district court abused its discretion here. They have neither identified a prejudicial error in the jury instructions nor offered a persuasive reason to conclude that the jury's verdict in the Hospital's favor is not in accordance with the weight of the evidence presented at trial. We therefore affirm the district court's denial of plaintiffs' Rule 59 motion.

* * *

We have considered plaintiffs' remaining arguments and find in them no basis for reversal. The order of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court