*Cain v. McDonough*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand twenty-four.

PRESENT:

> BETH ROBINSON,
> ALISON J. NATHAN,
> > *Circuit Judges*,
> VINCENT L. BRICCETTI,*
> > *District Judge*.

_____

TRACY CAIN,

> *Plaintiff-Appellant*,

> v.                                                          No. 23-7302

DENIS RICHARD MCDONOUGH, *Secretary of Veterans Affairs*,

> *Defendant-Appellee*,

_____

 * Judge Vincent L. Briccetti, of the United States District Court for the Southern District of New York, sitting by designation.

DEPARTMENT OF VETERANS AFFAIRS,

     *Defendant.**

_____

FOR APPELLANT:                                 Matthew V. Simeone, Cheektowaga, NY.

FOR APPELLEE:                                 Michael S. Cerrone, Assistant United States Attorney, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY.

Appeal from a judgment of the United States District Court for the Western District of New York (Crawford, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on August 9, 2023, is **AFFIRMED**.

Plaintiff-Appellant Tracy Cain appeals from the grant of summary judgment for Defendant-Appellee Dennis Richard McDonough, Secretary of Veterans Affairs ("Secretary"), and Defendant Department of Veterans Affairs ("VA"). We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

_____

 * The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

In September 2017, the VA hired Cain as a VA police officer in the Syracuse VA Medical Center. In May 2019, Cain reported to her supervisor that Paul White, another VA officer, had been sexually harassing her. Cain filed a single-count complaint against the VA and the Secretary alleging that they failed to adequately respond to her complaint of sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq*. The defendants moved for summary judgment, which the district court granted. *Cain v. McDonough*, No. 1:21-cv-634, 2023 WL 5110249, at *1 (W.D.N.Y. Aug. 9, 2023).

We review the district court's grant of summary judgment without deference. *Byrne v. Rutledge*, 623 F.3d 46, 52 (2d Cir. 2010). If, construing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact then the movant is entitled to judgment as a matter of law. *Id.*

Defendants here do not dispute that White's conduct was sufficiently severe and pervasive to qualify as sexual harassment. At issue is whether Defendants can be held liable.

When an individual sues their employer under Title VII, the plaintiff must show "a specific basis . . . for imputing the objectionable conduct to the

employer." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015).[1] "An employer's liability for hostile work environment claims depends on whether the underlying harassment is perpetrated by the plaintiff's supervisor or [the plaintiff's] non-supervisory co-workers." *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015). "[W]hen the harassment is attributable to a co-worker . . . the employer will be held liable only for its own negligence." *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998).

The district court determined that White was Cain's co-worker. *Cain*, 2023 WL 5110249, at *8. Because Cain does not challenge that conclusion on appeal, we assume without deciding that White is Cain's co-worker. Therefore, Cain "must demonstrate that her employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009).

The following facts are undisputed for purposes of defendants' summary judgment motion. After Cain told White that she was not interested in a sexual

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

relationship with him, he served as her first-line supervisor for one day. At the end of their shift, White sent an email to the VA's police chief complaining of Cain's alleged poor performance. The next day, May 3, 2019, Cain's first-line supervisor, Lieutenant Robin Lawrence, investigated White's allegations and concluded that they were not true. When Lawrence first reached out to Cain about White's email, Cain did not tell Lawrence about White's sexual overtures. On Sunday, May 5, 2019, Cain reported White's conduct to Lawrence, who immediately informed the VA's police chief. The next day, May 6, 2019, Cain gave a statement to the criminal investigator and deputy chief, which Cain signed on May 7, 2019. Also on May 6, the VA began an investigation, and then took the following actions: changed Cain's shift so that she was not working the same shift as White, took away White's service weapon and removed his access to the weapon locker, relocated White to an office in another wing of the building, and instructed White to stay in that wing and not to come into Cain's office area.

Cain's argument focuses on what happened next. Three times, White came into the office area near Cain's desk after the stay-away order. In the first two instances, White came to the administrative area near Cain's cubicle, and

either shuffled papers or lingered near her. He did not speak to, touch, or attempt to touch Cain. Cain did not report his conduct. On the third occasion, White came to the same area, shuffled papers, and remained for a shorter period of time. Cain reported these incidents to the police chief. In response, the chief had another conversation with White and told him that he could not spend time in the area near Cain's desk. If he had something to drop off in the administrative office, he should "drop it off and go." App'x at 127. The chief told Cain that on occasion White may have to come to the administrative office near Cain's work area, but he would not need to stay near Cain's desk for any length of time. After that, Cain had no further problems; White only came to her office area a few times, and each visit was very brief.

Cain argues that the VA is liable because its response to her complaint of sexual harassment by White was inadequate. On these facts, we disagree. The VA instituted a formal investigation within one business day after Cain reported the harassment. The VA took the allegations seriously. And the VA's response was multifaceted and included steps to prevent Cain and White from working

overlapping shifts,[2] relocating White to a different wing of the building, taking away White's service weapon, and requiring White to stay away from Cain's work area. As soon as Cain notified her supervisors that White had stood near her desk following the stay-away order, they took effective action to ensure that it didn't happen again. Moreover, at the conclusion of its investigation the VA placed White on a last chance agreement, which included a demotion from lieutenant to line officer.

The VA's response here stands in contrast to cases where we have concluded that a reasonable juror could find that an employer failed to take appropriate remedial action. *See, e.g.*, *Duch*, 588 F.3d at 760–61, 766-67 (supervisor responded to initial report of harassment by suggesting he did not want to hear about it, and employer did not open an investigation for three months, during which time the harassment escalated).

Citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62 (2d Cir. 2000), Cain counters that White's violation of the stay-away order creates a dispute of fact as to whether the VA's response was adequate.

---

[2] Cain does not challenge this remedy or contend that she was moved to a less advantageous shift.

But "an employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in . . . correcting sexually harassing conduct." *Whidbee*, 223 F.3d at 72. True, we have recognized that where harassment continues after an employer receives complaints, that may create an issue for the jury as to whether the employer's response was adequate. *Id.* But we do not read those cases as holding as a matter of law that any time a harassing co-worker violates an order to stay away from the complainant a jury could conclude that the employer's response was inadequate.

In *Whidbee*, the plaintiffs reported several incidents of racially harassing comments by a co-worker. *Id.* at 66–68. Their manager did not speak to the offending co-worker for several days, during which time the racially harassing comments continued. *Id.* at 66-67. Then, after the manager gave the harassing co-worker a verbal warning, the co-worker made further racially harassing statements. *Id.* at 67. In response to the plaintiffs' complaints, the manager suggested that he could not "control [the co-worker's] mouth," and said he did not know how to deal with the problem. *Id.* The manager then gave the co-worker a written warning, but the harassment continued unabated. *Id.* at 68. In the end, on the same day the manager issued a third warning, the plaintiffs

resigned. *Id.* In that context, we recognized that the continued harassment after the plaintiffs' reports was a factor suggesting that the employer's response was inadequate. *Id.* at 72–73.

That's a far cry from the facts here. It is undisputed that White did not speak to or contact Cain after her initial complaint, that Cain did not report White's coming near her desk the first two times he came to the administrative office area, and that once she reported these incidents, the police chief effectively ensured that White stayed away from Cain. Based on these facts, we conclude that no reasonable juror could find that the VA failed to take appropriate remedial action.

\* \* \*

We have considered Cain's remaining arguments and conclude that they are without merit. Accordingly, the District Court's judgment is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9