**Courtnaye CHARLEY, Plaintiff,**

v.

**TOTAL OFFICE PLANNING SERVICES, INC., and John Doe, Defendants.**

**14 Civ. 85 (NRB)**

United States District Court,
S.D. New York.

Signed August 23, 2016

Brittany Alexandra Stevens, Marjorie Mesidor, Nicole Ann Welch, William Kerry Phillips, Phillips & Associates Attorneys at Law PLLC, New York, NY, for Plaintiff.

Margaret Larkin Watson, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Morristown, NJ, Mark Alan Rosen, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Newark, NJ, for Defendants.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD,
UNITED STATES DISTRICT JUDGE

Plaintiff Courtnaye Charley brings this action against defendants Total Office Planning Services, Inc. ("TOPS") and Joseph Oddo, named in the amended complaint as "John Doe," alleging hostile work environment in violation of 42 U.S.C.

§ 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq., and retaliation in violation of the NYCHRL. Defendant TOPS now moves for summary judgment on all claims. For the reasons that follow, TOPS' motion is granted as to Charley's Section 1981 claim and the remaining claims are dismissed without prejudice, as this Court declines to exercise supplemental jurisdiction over the state and municipal causes of action.

## BACKGROUND [1]

Charley, an African-American lesbian,[2] at all relevant times belonged to the United Brotherhood of Carpenters and Joiners of America and Local Union 157 (the "Union") and worked as a First Year Apprentice. TOPS is a business that installs furniture in offices. Oddo is a member of the Union and serves as a shop steward.

When a furniture installing job requires one or more carpenters, TOPS will hire members of the Union pursuant to a Collective Bargaining Agreement (the "CBA"). These hires are job-specific: they last as long as the job does. TOPS must hire, pursuant to the CBA, a steward and an apprentice if the job requires a certain number of carpenters. The foreman, a TOPS employee, serves as a supervisor on the project at issue, while an apprentice does essential but low-level work. The parties dispute the precise role played by a shop steward, though Charley claims that Oddo submitted her hours to the Union, assigned her tasks, and provided direction, and that she was to report any problems to him. TOPS cannot chose who it hires from the Union, but rather identifies its needs for a particular job and the Union chooses the members that will work on the job.

On July 18, 2013, TOPS requested a "shoppy" and an apprentice for a job at 30 Rockefeller Plaza, and the Union sent Oddo and Charley to the job on July 20, 2013. See Decl. of Margaret L. Watson ("Watson Decl."), Ex. F (July 18, 2013 request from TOPS for job starting July 20, 2013) ; see also id. Ex. G (listing July 20, 2013 as first day of work at TOPS for Oddo and Charley). Charley worked on this job for six days, and Oddo worked those same dates, plus two additional days, as the steward must be the last person on the job pursuant to the CBA. Charley finished the job on July 26 and Oddo finished the job on July 30.

Oddo's allegedly harassing behavior occurred on July 23, 2016, a day on which, in addition to Oddo and Charley, the foreman, Dom Gagliardi, worked at 30 Rockefeller Plaza. See Watson Decl., Ex. G (listing workers on the job at 30 Rockefeller Plaza and dates worked). On that day, Oddo told Charley that he had questioned his sexuality until the age of 21 because he "had a small penis all of his life." Pl.'s 56.1 Stmt. ¶ 49. Charley told Oddo that, as a woman and a lesbian, his comments were offensive and inappropriate, as Oddo "was her union representative and supervisor."

---

1. The facts recited here are, unless otherwise noted, drawn from Defendant's Statement of Undisputed Material Facts Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1 and Plaintiff's Response to Defendants' [sic] Rule 56.1 Statement of Undisputed Material Facts ("Pl.'s 56.1 Stmt.").

2. Neither parties' 56.1 statement identifies Charley's race and TOPS denied the one reference to her race in her amended complaint, which stated that she "was discriminated against during the course of her employment with Defendant TOPS by Defendant JOHN DOE **because of her race, being that of African-American descent.**" Am. Compl. ¶ 31. Nonetheless, we accept Charley's counsel's representation at oral argument that Charley is African-American.

Id. ¶ 51. Later that day, while on the phone with a woman of West Indian descent, Oddo yelled at Charley that "the union hired these fucking monkeys." Id. ¶ 53. Charley expressed her strong disapproval of this statement and told Oddo that it made her uncomfortable. In response, Oddo told her that she should complain to the Union if she was offended and that African-Americans "call each other niggers all the time," and so the use of such language should not offend her. Id. ¶ 56

That same day, Oddo asked to speak with Charley in her car. Due to her safety concerns, Charley asked him to meet her in the Rockefeller Center lobby. There, Oddo apologized for his comments and gave Charley an updated union card that showed that her late union dues had been paid. On July 30, after Charley had finished the job at 30 Rockefeller Plaza, she received a call from someone who said he was a union representative. The caller told her there was an open position in Queens if she needed work. Charley recognized the caller as Oddo and hung up the phone.

## DISCUSSION

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material when it might affect the outcome of the suit under governing law." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir.2007) (internal quotation marks omitted). Disputes regarding facts that are not material will not forestall the entry of judgment if the moving party has properly supported its motion.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The district court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Kessler v. Westchester Cnty. Dep't of Soc. Servs., 461 F.3d 199, 206 (2d Cir. 2006) (internal quotation marks omitted).

The moving party must first "make a prima facie showing that it is entitled to summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party puts forth such a showing, the party opposing the entry of summary judgment must then present "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## I. Federal Hostile Work Environment Claim

■ Charley claims she experienced a racially hostile work environment in violation of 42 U.S.C. § 1981.[3] TOPS' motion for summary judgment on this claim is granted, as Charley has not put forth sufficient evidence for a reasonable jury to find that she experienced an objectively hostile work environment or that Oddo's behavior can be imputed to TOPS.

### A. Legal Standard

■ "A hostile work environment claim requires a showing [1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exists

---

**3.** Charley's brief states that she brings a hostile work environment claim based on race, gender, and sexual orientation discrimination pursuant to Section 1981. Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. Dismissing Pl.'s Compl. at 5. However, Section 1981 does not apply to claims of gender and sexual orientation discrimination. See Zemsky v. City of New York, 821 F.2d 148, 150 (2d Cir.1987) ("A plaintiff states a viable cause of action under Section 1981 ... only by alleging a deprivation of his rights on account of race, ancestry, or ethnic characteristics.").

for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir.2002) (2d Cir. 2002) (internal quotation marks omitted). We address each prong of this standard in turn.

With respect to the first prong, "[t]his standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir.2014). Courts must evaluate the circumstances as a whole, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). "[W]hether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." Schwapp v. Town of Avon, 118 F.3d 106, 110–11 (2d Cir.1997) (internal quotation marks and citations omitted).

With respect to the second prong, in order to determine the showing necessary to impute an employee's harassing behavior to an employer, a determination must be made as to whether the harassing employee is properly classified as a supervisor or co-worker. If the harassing employee is a supervisor, then the employer is liable for a hostile work environment created by the supervisor unless the employer can establish "that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." Vance v. Ball State Univ., —— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013). However, if the harassing employee is a co-worker, "the employer is liable only if it was negligent in controlling working conditions," id. and "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir.2000) (internal quotation marks omitted).

**B. Discussion**

Charley's hostile work environment claim fails, because she has not set forth sufficient facts from which a reasonable jury could determine that "a reasonable person would find [the working environment at TOPS] hostile or abusive." Raspardo, 770 F.3d at 114. In support of her hostile work environment claim, Charley points to three comments made by Oddo: (1) that he had previously questioned his sexuality because "had a small penis all of his life," Pl.'s 56.1 Stmt, ¶ 49; (2) that "the union hired these fucking monkeys," id. ¶ 53; and (3) that African-Americans "call each other niggers all the time," so Charley should not be offended by his language.[4] Id. ¶ 56.[5] While Charley

---

4. TOPS addresses a fourth statement by Oddo, a comment that a female co-worker was "very macho, strong, and manish [sic]." Mem. of Law in Supp. of Def.'s Mot. for Summ. J. Dismissing Pl.'s Compl. at 7. However, while this statement appears in the amended complaint, Charley does not include it in her 56.1 statement, affidavit, or any other form of admissible evidence, nor does she rely on it in her brief opposing TOPS' motion.

Therefore, we do not consider this statement in our analysis. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (nonmovant may oppose summary judgment "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

5. While Charley asserts that these statements are "example[s]," and that Oddo "made vari-

contends that she was "treated less well and singled out because of her gender," Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. Dismissing Pl.'s Compl. at 9, she provides no citation to the record, nor do we discern any support for this proposition in her 56.1 statement or affidavit.

These three statements, made over the course of a single day, none of which Oddo directed at Charley or made in a physically threatening or humiliating manner, cannot provide a basis for a reasonable jury to conclude that Oddo subjected Charley to hostile or abusive treatment.[6] See Daniel v. T & M Prot. Res. LLC, 87 F.Supp.3d 621, 639 (S.D.N.Y.2015); see also Fraser v. Fiduciary Trust Co. Int'l, No. 04 CIV. 6958 (PAC), 2009 WL 2601389, at *8 (S.D.N.Y. Aug. 25, 2009), aff'd, 396 Fed.Appx. 734 (2d Cir.2010). In Daniel, the plaintiff put forward evidence that his supervisor, inter alia, said that their employer's clients preferred to hire Caucasians for a particular job, told him repeatedly "you are not black because you don't wear your pants down your waist; you don't swagger; or you don't what up," said that he "look[ed] like a gorilla," asked him if he would "vote for [his] man, Obama," screamed at him that he was a "fucking nigger," imitated his accent, told him to "go back to England," asked him why his didn't stay in his "own" country, told him he would make a "good Mary Poppins," referred to a co-worker as a "homo," and called the plaintiff a "homo." 87 F.Supp.3d at 631–32 (internal quotation marks omitted). Nonetheless, the court held that "[plaintiff's] mistreatment does not rise to the level of 'severe or pervasive' harassment so as to create a 'hostile or abusive' work environment," even though plaintiff's "testimony indicate[d] that he was mistreated—based in part on his race, perceived national origin, and perceived sexual orientation." Id. at 639. Similarly, in Fraser, the court granted defendants' motion for summary judgment on plaintiff's hostile work environment claim where the plaintiff alleged that his co-workers, inter alia, "suggested that African-Americans are lazy and on welfare, and made disparaging remarks about African-American women in [plaintiff's] presence," and that his supervisor called him a "nigger," because while reprehensible, "this behavior ... is not sufficiently severe or pervasive to sustain a hostile work environment claim." 2009 WL 2601389, at *8. Oddo's treatment of Charley, while completely inappropriate, is less egregious than the conduct at issue in Daniel and Fraser, both of which involved offensive conduct directed at the plaintiff. Therefore, like the plaintiffs' hostile work envi-

---

ous comments relating to sexuality" and "made comments that were sexist, homophobic, and highly offensive," Pl.'s 56.1 Stmt. ¶¶ 46, 48, 49, she provides no other instances of such conduct. Because "[a]ffidavits [offered in opposition to summary judgment motions] must be based on 'concrete particulars,' not conclusory allegations," Schwapp, 118 F.3d at 111 (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.1985)) (holding that "the district court properly refused to rely" on affidavits "[t]o the extent [they] contain bald assertions" such as that a defendant "was always making racial slurs about minorities"), we examine only the specific conduct identified.

6. As "one type of hostility can exacerbate the [e]ffect of another," Terry v. Ashcroft, 336 F.3d 128, 150 (2d Cir.2003) (finding that "hostile racial attitudes could have exacerbated the [e]ffect of ... age-based hostility and vice versa"), we consider Oddo's comment allegedly motivated by gender and sexual-orientation hostility in evaluating Charley's Section 1981 claim. But see Feingold v. New York, 366 F.3d 138, 151–52 (2d Cir.2004) (considering allegations of racial discrimination in analyzing hostile work environment based on religion pursuant to Title VII, and additionally considering evidence of sexual orientation harassment in reviewing hostile work environment claims brought pursuant to NYSHRL and NYCHRL, "since the state and city laws prohibit discrimination on that basis.").

ronment claims in those cases, Charley's Section 1981 claim fails.

 Even if Charley had put forth sufficient evidence for a reasonable jury to conclude that Oddo's actions were sufficiently severe or pervasive to constitute a hostile work environment, there is no basis to impute Oddo's conduct to TOPS. As noted supra at 429, if the harassing employee is a supervisor, the employer is liable for the employee's creation of a hostile work environment unless it can establish an affirmative defense. "[A]n employee is a 'supervisor' for purposes of vicarious liability under [Section 1981] if he or she is empowered by the employer to take tangible employment actions against the victim . . ." Vance, 133 S.Ct. at 2439.[7] A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id. at 2443 (internal quotation marks omitted).

 There is no evidence in the record that even suggests that Oddo could take any tangible employment actions against Charley. Rather, Charley contends that Oddo functioned as her supervisor because he submitted her hours to the Union, gave Charley "her daily work assignments," and because Charley was to look to Oddo if there was a problem or if she needed direction. Pl.'s 56.1 Stmt. ¶ 6. Such responsibilities are clearly insufficient to establish that Oddo could take tangible employment actions with respect to Charley, and therefore acted as her supervisor. First, the submission of Charley's hours to the Union is a ministerial task related to his role in the Union, not with TOPS.[8] Second,

the Supreme Court in Vance rejected a definition of "supervisor" that "tie[d] supervisor status to the ability to exercise significant direction over another's daily work." 133 S.Ct. at 2443. Finally, even if Charley was to look to Oddo for the resolution of problems, we cannot infer from such a role that Oddo could effect "a significant change in [Charley's] employment status." Id.

 As Oddo did not act as Charley's supervisor, TOPS is only liable for his conduct if it "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." Dabney v. Christmas Tree Shops, 958 F.Supp.2d 439, 460 (S.D.N.Y.2013), (internal quotation marks omitted), aff'd sub nom. Dabney v. Bed Bath & Beyond, 588 Fed.Appx. 15 (2d Cir.2014). Charley's brief presents no arguments contending that TOPS failed to provide a reasonable avenue for complaint or knew or should have known of Oddo's statements and the record shows that such any such argument would be unavailing. While TOPS does not have a written antidiscrimination policy, this fact, "standing alone, does not permit a finding that the employer has failed to provide a reasonable avenue for complaint or that the employer knew of the harassment but did nothing about it." Suares v. Cityscape Tours, Inc., No. 11 Civ. 5650 (AJN), 2014 WL 969661, at *9 (S.D.N.Y. Mar. 12, 2014) (internal quotations marks and alterations omitted), aff'd, 603 Fed. Appx. 16 (2d Cir.2015). Charley does not dispute that the foreman acted as a supervisor on the job, or even that TOPS informed her that she should raise any problems to the foreman. See Pl.'s 56.1 Stmt.

---

**7.** While Vance analyzed the meaning of "supervisor" in the Title VII context, the Second Circuit has applied its analysis to Section 1981. Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 113–14 (2d Cir.2015)

**8.** Indeed, in her first complaint, Charley sued only Oddo and the Union, which she did not name in her amended complaint. Pl.'s 56.1 Stmt. ¶¶ 31-32.

¶ 8 (denying TOPS' statement that the foreman is the "boss" on a TOPS job and that employees are told to bring problems to the foreman only to the extent that the shop steward also supervised apprentices). There is no assertion in the record that Charley did not think she could speak to the foreman about any alleged discrimination or that she feared retaliation if she complained to the foreman, see Borrero v. Collins Bldg. Servs., Inc., No. 01 Civ. 6885 (AGS), 2002 WL 31415511, at *12 (S.D.N.Y. Oct. 25, 2002) (plaintiff failed to put forward sufficient evidence that defendant provided no reasonable avenue of complaint where "there [was] no allegation that [plaintiff] was confused or concerned about her ability to reach . . . management to tell them about the [harassment]" and "there [was] no evidence that [plaintiff] feared that her complaint would trigger any retaliatory animus against her"), and in fact, in response to TOPS' statement that Charley never complained to anyone at TOPS, Charley only asserts that "because Oddo was her supervisor," she "did not complain to anyone at the union. Pl.'s 56.1 Stmt. ¶ 29 (emphasis added). Given this admission and assertion, it is not a reasonable inference from Charley's statement that "[i]f there was any problem while she was working, [Oddo] was the individual she was to report to," Pl.'s 56.1 Stmt, ¶ 42, that TOPS told her anything of the sort. As even a single avenue of complaint suffices, see Duch v. Jakubek, 588 F.3d 757, 762–63 (2d Cir.2009) ("[T]he relevant inquiry is . . . whether defendants provided no reasonable avenue of complaint." (internal quotation marks omitted)), Charley has not put forward sufficient evidence for a reasonable jury to determine that TOPS provided her with no reasonable avenue of complaint.

## II. Remaining Claims

■ Charley argues that this Court should exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims even if we dismiss her sole federal claim. Pursuant to 28 U.S.C. § 1367(c)(3), a district court exercising supplemental jurisdiction over state claims may, in its discretion, dismiss those claims without prejudice if it dismisses all federal claims on the merits. We exercise that discretion now, and dismiss the NYSHRL and NYCHRL claims without prejudice.

■ As a general matter, "[i]f the federal claims are dismissed before trial . . ., the state claims should be dismissed as well." First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004). While Charley argues that given the substantial resources expended to prepare and review the factual record in this case, we should exercise supplemental jurisdiction over the remaining claims. However, district courts frequently decline to exercise supplemental jurisdiction over state employment discrimination causes of action when the federal claims have been resolved, see, e.g., Murray v. Visiting Nurse Servs. of N.Y., 528 F.Supp.2d 257, 280–81 (S.D.N.Y.2007), and the record in this case is not so voluminous that judicial economy counsels in favor of retaining jurisdiction. Cf. Fleming v. MaxMara USA, Inc., 644 F.Supp.2d 247, 267 (E.D.N.Y. 2009) (retaining jurisdiction where the parties and court expended "substantial resources . . . in developing . . . and . . . in reviewing [respectively] . . . the voluminous factual record"). Therefore, we decline to exercise supplemental jurisdiction over Charley's state and municipal claims, and dismiss them without prejudice.

## CONCLUSION

For the reasons stated above, TOPS' motion for summary judgment is granted as to Charley's hostile work environment claim brought pursuant to Section 1981, and the remaining claims are dismissed

without prejudice. This Memorandum and Order terminates Docket No. 35, and Docket No. 44 is terminated as moot. As defendant Oddo has not been served, and given Charley's counsel agreement at oral argument that there is no reason not to dismiss the case against him, the Clerk of Court is instructed to close this case.

**SO ORDERED.**